Thomas Clark WAYMAN,
Plaintiff–Appellant,

v.

COUNTY OF LOS ANGELES,[1]
Defendant–Appellee.

No. 00–56036.
D.C. No. CV–98–08697–SVW.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 2001.

Decided Dec. 4, 2001.

---

1. Erroneously sued as "Los Angeles County Board of Supervisors."

Before SCHROEDER, Chief Judge, TROTT and RAWLINSON, Circuit Judges.

MEMORANDUM [2]

Harbor–UCLA Medical Center ("Harbor–UCLA" or "hospital"), a Los Angeles County hospital, admitted Thomas Wayman ("Wayman") against his will for 24-hour psychiatric evaluation and treatment. He brought this action under 42 U.S.C. § 1983 against Los Angeles County ("County"), alleging that the hospital violated his constitutional rights when, pursuant to an established practice or custom, it failed to independently review his medical condition before admitting him. Finding no evidence of such a practice, the district court granted summary judgment in favor of the County. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and affirm the district court's decision.

**2.** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

## I Background

Two Los Angeles police officers responded to a disturbance at a public swimming pool where they confronted Wayman. The officers deemed Wayman's behavior aberrant, took him into custody, and transported him to Harbor–UCLA for a " § 5150" psychiatric hold. *See* Cal. Wel. & Inst.Code § 5150 (" § 5150"). Section 5150 provides that a police officer "who has probable cause to believe that the person is, as a result of mental disorder, a danger to others, or to himself" may take that person into custody and place him in a facility designated by the County for "72-hour treatment and evaluation."

Dr. Charles McDaniel ("McDaniel"), a medical resident, evaluated Wayman when he first arrived at the hospital. Wayman seemed agitated, and exhibited "bizarre mannerisms" and violent behavior. After McDaniel consulted with the supervising physician, Dr. Martin Mueller ("Mueller"), they decided to admit Wayman as an involuntary patient for evaluation and treatment under § 5150. Wayman was subjected to four-point restraints, given psychotropic medication, and observed for 24 hours before being released.

Wayman brought this § 1983 action against the County, alleging that Harbor–UCLA wielded a "rubber stamp" by accepting, without independently verifying, a police officer's determination that probable cause existed for detaining patients under § 5150 ("Rubber Stamp Policy"). Wayman contended that this practice resulted in, and was deliberately indifferent towards, the unjustified, involuntary admission of thousands of patients, including himself, in violation of their First, Fourth, and Fourteenth Amendments rights. The district court granted the County's motion for summary judgment.

## II Standard of Review

We review the district court's grant of summary judgment de novo. *Ray v. Henderson,* 217 F.3d 1234, 1239 (9th Cir. 2000). Viewing the evidence in the light most favorable to Wayman, we determine whether any genuine issues of material fact could support his § 1983 claim against the County, and whether the district court correctly applied the substantive law. *Id.* at 1239–40. Wayman must introduce some "significant probative evidence" tending to show the existence of the County's alleged Rubber Stamp Policy. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Mere allegation and speculation" will not suffice. *Nelson v. Pima Community College,* 83 F.3d 1075, 1081 (9th Cir.1996).

## III The County's Liability Under Section 1983

*Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and its progeny govern municipal liability actions under § 1983. Under this line of decisions a local government may be liable "only where the municipality *itself* causes the constitutional violation." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "[A]lthough the touchstone of the § 1983 action against a government body is an allegation that official policy" deprives a plaintiff's constitutional rights, liability may also attach from local governmental custom "even though such custom has not received formal approval" from the government's official policymakers. *Monell,* 436 U.S. at 690–91, 98 S.Ct. 2018. *See also Thompson v. City of Los Angeles,* 885 F.2d 1439, 1443 (9th Cir.1989). Thus, a local government's policy of inaction constitutes grounds for suit where the failure "amounts to deliberate indifference to the rights of persons" impacted by the inac-

tion. *City of Canton*, 489 U.S. at 388, 109 S.Ct. 1197. *See also Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992). A § 1983 plaintiff can prevail only by demonstrating that the alleged policy is so "closely related to the ultimate injury" as to constitute the "moving force behind" it. *City of Canton*, 489 U.S. at 391, 388, 109 S.Ct. 1197.

■ Wayman relies exclusively on the deposition testimony of Drs. Mueller and McDaniel to demonstrate the existence of the County's Rubber Stamp Policy. The most generous interpretation of their testimony suggests that Harbor–UCLA never rejects a § 5150 patient delivered by a police officer. Such evidence, however, is not probative of a County practice of failing to conduct an independent psychiatric evaluation prior to admitting a patient. Wayman provides no documentation or direct testimony suggesting the existence of the practice he purports to attack, nor any evidence concerning the admission and evaluation of the supposed thousands of other § 5150 patients who were similarly victimized. Indeed, Mueller testified that County doctors adhered to Harbor–UCLA's written policies which require independent examinations before a doctor may involuntarily admit a patient. Thus, Mueller's deposition testimony, which serves as the cornerstone of Wayman's complaint, flatly contradicts Wayman's assertion that doctors acted pursuant to a County Rubber Stamp Policy.

■ Even assuming for argument's sake that Mueller and McDaniel did "rubber stamp" § 5150 patients, the doctors' behavior would evidence, at most, culpable conduct by individuals rather than an established County policy as required for liability under *Monell* and *City of Canton*. In sum, Wayman offers no evidence that a County policy was the moving force behind his alleged injuries. The district court correctly granted summary judgment on Wayman's § 1983 claim against the County.

AFFIRMED.